IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Terry Jerome Smith, ) | Civil Action No. 6:09-3280-TLW-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Tom Fox, Officer Eastridge, Officer ) Rushchioni, and Major Johnson, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 53). The plaintiff, who is a local prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The plaintiff claims that employees at the J. Reuben Long Detention Center ("JRLDC") in Horry County, South Carolina, used excessive force against him and then denied him medical treatment. Defendant Tom Fox is the Director at JRLDC, Major Johnson is a supervisor at JRLDC, and Officers Eastridge and Rushchioni are correctional officers at the facility.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On June 24, 2010, the defendants filed a motion for summary judgment. By order filed June 25, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on June 29, 2010.

## **FACTS PRESENTED**

The plaintiff alleges that on November 10, 2009, he was out of his cell at JRLDC for permitted recreation time. When the period ended, Officers Eastridge and Rushchioni attempted to put him back in his cell. The plaintiff claims the officers lifted him off the ground to force him into his cell. He alleges that Eastridge squeezed his finger, causing it to break. As they entered the cell, the plaintiff's head struck the cell door. Once he was in the cell, the plaintiff began to "wiggle and squirm a little," whereupon the officers grabbed him and slammed him into the wall. The plaintiff asserts that he has received no medical attention for his injuries. As for Director Fox and Major Johnson, the plaintiff alleges that both perform poorly in their respective supervisory positions. He seeks $250,000.00 for physical and mental abuse and wants to see "justice done on these officers" (amended comp. p. 3-5).

In support of their motion for summary judgment, the defendants submit the affidavits of Eastridge and Nurse Dawn Wilson, along with the plaintiff's records from the JRLDC medical unit. Eastridge testifies that on the incident date, he instructed the plaintiff to sit down so that he could remove his leg irons. The plaintiff refused and began resisting, then became combative and threatening. Officer Rushchioni and another officer came to assist in restraining the plaintiff. Eastridge does not recall the plaintiff suffering any injury, but says that he was bitten by the plaintiff during the incident (Eastridge aff.). Nurse Wilson testifies in her affidavit that the plaintiff never sought medical treatment for his purported injuries, despite having had the opportunity to do so. She further testifies that on the incident date, the plaintiff and Officer Eastridge both went to the local emergency room for testing for disease as a result of the plaintiff biting Officer Eastridge. She points to the JRLDC medical records that reflect that the plaintiff did not file a medical request form or visit the medical unit on November 10th, the date of the incident, nor did he seek any medical attention until November 22nd, when he filed a medical request form for an

unrelated skin condition. The following day he submitted a second medical request form for back pain in relation to a previous automobile accident (Dawn Wilson aff.).

In his response in opposition to summary judgment, the plaintiff disputes only the defendants' position that he was not injured. He reasserts that his finger remains broken and that he suffers occasional black-outs after hitting his head against the cell door (doc. 56).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold

3

demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff invokes the Eighth Amendment with his allegation that Officers Eastridge and Rushchioni used excessive force and injured him while placing him in his cell. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298-304 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In *Hudson v. McMillian*, 503 U.S. 1 (1992), the United States Supreme Court held that whether the prison disturbance is a riot or a lesser disruption, corrections officers are required to balance the need to restore discipline through the use of force against the risk of injury to inmates. The Court held that "whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is…whether force was

4

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7. In *Wilkins v. Gaddy*, 130 S.Ct. 1175 (2010), the United States Supreme Court held that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. *Id.* at 1177-78 (citing *Hudson*, 503 U.S. at 4). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation'" and may indicate the amount of force applied. *Id.* at 1178 (quoting *Hudson*, 503 U.S. at 7).

Here, the plaintiff cannot meet the objective threshold of a constitutional claim for excessive force. As characterized by Nurse Wilson in her affidavit, the plaintiff's medical records are "simply devoid of any evidence of the incident ... or that he sustained any physical injury, by trauma or otherwise...." (D. Wilson aff. ¶ 8). Moreover, the court notes from the records that the plaintiff sought medical attention for other, unrelated matters soon after the November 10th incident; clearly the plaintiff had the opportunity to report any injuries arising from the incident. The force used by the officers to control the plaintiff cannot be described as improper and certainly not repugnant. Officer Eastridge's affidavit sets forth that the plaintiff was combative and threatening, evidence the plaintiff does not refute in his response (doc. 56), nor does the plaintiff deny biting Officer Eastridge while he was being restrained during the incident. Under the circumstances thus presented, the evidence indicates that the amount of force used to control the plaintiff was reasonable.

On the subjective component of this inquiry, the plaintiff's claim also fails. He has presented nothing to suggest that Officers Eastridge and Rushchioni (or anyone else, for that matter) intended to harm him as they struggled to place him in his cell. As set forth above, the force used by the officers was reasonable given the circumstances with which they were confronted.

5

To the extent the plaintiff asserts a claim for deliberate indifference to a serious medical need, such claim also fails. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth

6

Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

As set forth above, the plaintiff's injuries, if any, were not serious. His minimal injuries at best, coupled with the records showing that the plaintiff had the ability and opportunity to request medical attention and treatment but failed to do so, belie his claims of deliberate medical indifference. Moreover, the affidavits of Officer Eastridge and Nurse Wilson provide evidence that the plaintiff was transported to the emergency room soon after the incident, but that the purpose of the visit was to test the plaintiff for infectious disease after he bit Officer Eastridge, and not for the alleged injuries claimed by the plaintiff. Had his injuries been sufficiently serious, the court is of the opinion they would have been noted and treated while he was in the emergency room. Accordingly, this claim fails.

Regarding Warden Fox and Major Johnson, the plaintiff has failed to allege that these defendants personally acted or failed to act in violation of his constitutional rights in this regard. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). Furthermore, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff

has failed to make such a showing here.  *See Miltier*, 896 F.2d at 854 (to bring claim alleging denial of medical treatment against non-medical supervisory prison personnel, inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct).  Based upon the foregoing, any medical indifference claim against these defendants fails.

Lastly, the defendants argue they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known.  This court agrees.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it.  *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation."  *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).  Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public."  *Wilson*, 526 U.S. at 609.  If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist."  *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).  The plaintiff's conclusory allegations fail to

demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 53) be granted.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

November 16, 2010

Greenville, South Carolina